## DELANO MILL CO. v. OSGOOD.

(Circuit Court of Appeals, First Circuit. November 13, 1917.)

No. 1300.

1. MASTER AND SERVANT ⇐224—MASTER'S LIABILITY FOR INJURY TO SERVANT —SCOPE OF EMPLOYMENT.

Defendant operated a woodworking mill, in which, on the roof above the finishing room, there was a dust room, into which the dust from the machines was carried by a fan. Plaintiff's intestate was operating a machine in the finishing room when a fire occurred in the dust room, and, taking one of the two fire extinguishers on his floor, he climbed the ladder and opened the door into the dust room, when an explosion took place by which he was fatally injured. His ordinary duties did not take him into the dust room, nor had he been instructed to go there in case of fire. *Held*, that his doing so was not within the scope of his employment, nor by implied request or invitation arising from the presence of the fire extinguishers in his own room, but was a voluntary act, as to which the defendant owed him no duty.

2. MASTER AND SERVANT ⇐270(17)—ACTION FOR INJURY TO SERVANT—EVIDENCE.

In the absence of evidence that defendant knew, or that it was a matter of common knowledge among mill men, that the dust in the dust room was liable to explode, should a fire occur therein and air be permitted to enter, expert testimony of such fact was not admissible to charge defendant with negligence in failing to warn or instruct employés of the danger, nor was evidence generally of the fire insurance rates on the building.

In Error to the District Court of the United States for the District of Maine; Clarence Hale, Judge.

Action by William W. Osgood, administrator, against the Delano Mill Company. Judgment for plaintiff, and defendant brings error. Vacated and remanded.

William H. Gulliver and William C. Eaton, both of Portland, Me., for plaintiff in error.

Benjamin Thompson, of Portland, Me., for defendant in error.

Before DODGE and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

BINGHAM, Circuit Judge. This is an action for personal injuries suffered by the plaintiff's intestate on the 9th of July, 1915, while attempting to put out a fire in the dust room on the roof of the defendant's mill. There was a trial by jury and a verdict for the plaintiff. The case is here on the defendant's bill of exceptions, and the errors assigned are to the court's denial of the defendant's motion for a directed verdict, to the refusal to give certain requested instructions, to the admission of evidence and to permitting certain witnesses to testify as experts.

[1] The declaration contains two counts. In the first count the plaintiff alleges that the defendant, on the 9th day of July, 1915, was and for a long time prior thereto had been engaged in carrying on the business of milling lumber and manufacturing therefrom various kinds

of cabinet work at its mill, situated at the corner of Fore and Cross streets, in Portland; that in said mill it operated certain finishing machines, which created a very fine dust and small particles of wood, which were removed from the machine by a blower system to a separator located above the dust room; that the dust room was built on the roof of the mill, and the dust and fine particles of wood descended from the separator into it; that the entrance to this room was by a ladder leading from the floor of the finishing room, through an opening in the roof of the mill, to a platform inclosed in a vestibule, and thence through a door leading from the platform to the dust room; that on said 9th day of July large quantities of dust and fine particles of wood had accumulated in the dust room and were liable to spontaneous combustion; that when the mill was in operation the air in the dust room was so filled with dust that in the event of fire therein, due to spontaneous combustion or otherwise, an explosion of great violence would occur the instant air came in contact with such fire and dust; that the defendant had fire extinguishers located in different parts of the mill; that it was the duty of the workmen employed in the finishing room and other parts of the mill to use the fire extinguishers in extinguishing any fire that might be discovered in the mill; that on the 9th day of July the plaintiff's intestate was in the employ of the defendant, engaged in operating a finishing machine in the finishing room; that it was the duty of the defendant to provide the plaintiff's intestate with a safe and proper place in which to perform his aforesaid duties, but that it carelessly and negligently allowed and permitted the place in which he was liable to be required to be in the performance of his duties to become unsafe, in that it allowed said dust room to become partly filled with said fine dust, with access thereto over the ladder and through the door into said room, so that, in the event of fire therein, a violent explosion would occur as soon as the door was opened; that the dangerous and unsafe condition of the room and the liability of explosion were well known to the defendant, or would have been by the exercise of reasonable care; that on the afternoon of said 9th of July, while the plaintiff's intestate was at work in the finishing room, a fire occurred in the dust room; that the plaintiff's intestate, without knowledge of the explosive character of the dust or the dangers to which he would be exposed by going into said room in the discharge of his said duties, seized a fire extinguisher and went up the ladder and into the dust room to extinguish the fire; that the instant the air through the door came in contact with the air and dust in the room an explosion occurred, and the flame enveloped the plaintiff's intestate as he attempted to escape down the ladder, severely burning him, from the effects of which he died on the 15th day of July, 1915.

The second count is like the first with the single exception that, instead of alleging that the defendant was negligent in failing to provide the plaintiff's intestate with a safe place in which to perform his duties, charged that it was the duty of the defendant to instruct him as to the dangerous and explosive character of the dust which it had permitted to be gathered in the dust room, and especially to warn him of the dangers to which he would be exposed in the event of fire

breaking out in the dust room and his going there to extinguish the same in the discharge of his duties.

In view of the allegation in each of the counts of the declaration—that the plaintiff's intestate, in going to the dust room to extinguish the fire, did so in the performance of his duties as a servant of the defendant—the motion of the defendant for a directed verdict raises the question whether there was evidence from which reasonable men might find that the deceased, in going to the dust room to put out the fire, was acting within the scope of his employment, pursuant to a legal duty which he owed the defendant under his contract of service.

The evidence discloses that the work he was called upon to perform in the defendant's mill was confined to working at a bench and on one or more machines in the finishing room on the second or upper floor of the mill, that his work in no way called upon him to go up the ladder into the dust room, and that he had never been requested or directed by any one in charge of the mill to go there in the event of a fire or for any other purpose. But, notwithstanding this, the plaintiff contends that there was evidence from which it could be found that he was impliedly requested to use the extinguishers and go into any part of the mill to put out a fire, including the dust room on the roof, and that, in attempting to do so, he was acting within the scope of his employment. The only evidence in support of this contention is that there were two fire extinguishers in the finishing room, one located in that portion of the mill facing Fore street and distant some 30 or 40 feet from the foot of the ladder, and the other in the rear portion of the room towards Commercial street. There were also two fire extinguishers on the floor of the mill below where the deceased worked, and the dust room was provided with automatic sprinklers. We are, however, of the opinion that, if from this evidence it could be found that the men employed in the finishing room, including the deceased, were impliedly requested as a part of their duties to make use of the fire extinguishers in case a fire occurred about their work in the finishing room, it would not warrant a finding that they were impliedly requested as a part of their duties to take fire extinguishers and go up over the ladder to the dust room on the roof to put out a fire in that room, a place where they had not been directed or called upon to perform any service in connection with their work, and where the defendant had provided automatic sprinklers in case fire occurred therein; that the deceased, in going there as he did, was not acting within the scope of his employment, but as a volunteer or bare licensee, as to whom the defendant owed no duty, except not to injure him intentionally or through its active intervention. McGill v. Granite Co., 70 N. H. 125, 46 Atl. 684, 85 Am. St. Rep. 618; Hobbs v. George W. Blanchard & Sons Co., 75 N. H. 73, 70 Atl. 1082, 18 L. R. A. (N. S.) 939; Andersen v. Berlin Mills Co., 88 Fed. 944, 32 C. C. A. 143. The court, therefore, erred in refusing the defendant's motion for a directed verdict on both counts.

The evidence also discloses that the deceased had been over the ladder to the dust room at various times for purposes apart from his employment, and that he must have known of the location of the room, the purposes to which it was devoted, the character of its construc-

tion, and the means of access provided thereto. He also knew there was a fire in the dust room at the time he went there on the day of the accident. As a reasonably intelligent man, he must have known that, if he opened the door while a fire was in progress in the room, thereby creating a current of air, the fire would spread with greater rapidity than otherwise. So far as these matters could be found to have contributed to his injury, he is to be regarded as having assumed the risk arising therefrom. The only ground upon which the defendant could have been charged with negligence under the declaration in, this case—had there been proof from which it could have been found that. the deceased was acting within the scope of his employment in going to the dust room to put out the fire—would have been under the second count for failure to warn him of the explosive character of the dust in the air of the dust room, and that, if a fire took place, an explosion would occur if air was permitted to come in contact with the fire and dust. We are therefore of the opinion that the jury was not warranted in finding that the defendant was in default in respect to any duty it owed the deceased as to the location, use, or construction of the dust room, or the approach thereto, and that, for this reason also, a verdict should have been directed for the defendant on the first count.

[2] There was no direct evidence that the defendant knew that the dust in the air of the dust room, should a fire occur therein, was liable to explode if air was permitted to come in contact with the fire and dust. The plaintiff, however, through experts, was permitted to show that fine dust held in suspense in the air, if brought in contact with fire, was explosive. This was permissible, provided it was shown that this scientific fact was a matter of common knowledge among mill men engaged in occupations like the defendant's, for the purpose of charging it with knowledge of the explosive character of the dust. But some of the experts testified that this was a matter of common understanding, although it appeared they did not know it was commonly known by men engaged in occupations like the defendant's, and the testimony was permitted to go to the jury notwithstanding the defendant requested that it be stricken out. Under the circumstances it was error to allow this testimony to stand.

Shea, the defendant's superintendent, was called as a witness in its behalf. On cross-examination he was required, against the defendant's objection, to testify as to the fire insurance rates on the defendant's mill as it existed before the fire, and, also as to the rates on a new mill which the defendant had constructed since the fire in another and remote part of the city, and the ground stated by plaintiff's counsel as the reason for offering the testimony was:

"I am bringing home notice to the man who was in charge of the mill of the fire risk he was maintaining there."

This evidence had no tendency to prove that the defendant knew the dust in the dust room was explosive, and we are unable to see wherein it was competent upon any issue in the case. It was, however, plainly prejudicial and its admission was error.

In view of the above conclusions, it is unnecessary to consider the

remaining assignments of error; and, as we are without authority to order a verdict for the defendant (Slocum v. New York Insurance Co., 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029), the case must be sent back for a new trial.

The judgment of the District Court is vacated, the verdict set aside, the case is remanded to that court for further proceedings not inconsistent with this opinion, and the plaintiff in error recovers its costs in this court.

ALDRICH, District Judge. I concur, but I should prefer to have the decision based upon the rule of remoteness. The injury was outside the line of duty resulting from mere employment to work in the lower room, and the presence of the hand extinguishers was not sufficient, under the circumstances, either upon the ground of implied request, creating duty, or upon the ground of invitation, to carry the obligations of the employer into a field so remote from what was contemplated.